312-0874, people of the state of Illinois, abrogated by Richard Blunders v. James Cox, appellant by Michael T. Jesus. Jen Tippis, but you're in the neighborhood, thank you. I'll have to dig that through, too. That's quite all right. Good morning, your honors. I'm Michael Jen Tippis on behalf of the appellant James Cox. The convictions James Cox received arising out of two separate incidents on June 11, 2011 were riven with error. I'd like to first address those errors that concern all of Mr. Cox's convictions before turning to those that specifically concern the threatening a public official count, pending any questions you may have. First, Cox's counsel was so ineffective at trial that he actually proved the state's case on the armed habitual criminal count. It was Cox's counsel who called the key witness that possession of a firearm, in which the state relied upon repeatedly in closing arguments. Cox should have been granted separate trials because the armed habitual criminal count required an introduction of Cox's prior convictions, information that was highly prejudicial on the other counts, and also required Cox's testimony, which was prejudicial on other counts. Furthermore, when those convictions were introduced, extraneous and impermissible information was transmitted to the jury about the circumstances of those prior cases. Cox therefore asked that this court remand for new and separate trials. Second, regarding specifically the threatening a public official case, neither the state nor the trial of the fact seemed to truly understand the elements of the offense. When such a claim is made against a sworn peace officer, there are additional elements that the state must prove beyond reasonable doubt. The state failed to do so here, and the jury was not instructed as to those elements. Cox therefore asked that his conviction be reversed, or at least remanded for a new trial based upon the jury instructional error. Setting first to those issues that concern all of the counts against Mr. Cox, this court should remand for a new trial because Cox's counsel was so ineffective that she actually proved the state's case on armed habitual criminal. Now, the state in its brief makes no argument on the deficiency of counsel's performance, and that's for good reason. There was no reason for counsel to call Justin Charleston to testify. We already knew from the testimony of Louis Vaughn, also a defense witness, how Mr. Charleston and Mr. Vaughn acquired the gun in this case. There was already testimony as to the course of the defendant's arrest, and there was already testimony as to the events that followed that. Furthermore, counsel should have known from discovery that Mr. Charleston was likely to testify that he had sold this weapon to Mr. Cox.  And by calling Mr. Charleston, counsel opened the door to questioning on that issue and the state's later reliance upon it in closing arguments. This information was highly prejudicial. It proved Cox's possession of the firearm, an element of the offense that none of the other witnesses on the defense side testified to, and none of the state witnesses had proved beyond a reasonable doubt. The state clearly knew the importance of that information. It relied repeatedly upon it in closing arguments, claiming that it was Cox's own witness that Even defense counsel herself attempted to downplay Charleston's importance in closing arguments, acknowledging the gravity of the error she had made in calling him in the first place. Secondly, this court should remand for severed trials on charges relating to two distinct incidents on June 11, 2011. The unfamiliar criminal count, which concerned the earlier incident on that evening, required the introduction of previous conviction information against Mr. Cox. That information was highly prejudicial on other counts, including those concerning threatening a public official. Furthermore, Mr. Cox testified concerning only the events of that armed habitual criminal count. But this opened the door to the state excoriating Mr. Cox in closing arguments for failing to testify about later events that occurred in the jail. Cox likely would not have testified in a separate trial concerning the threatening of public official count, where the evidence was extremely close. Additionally, the jury heard more information about those prior convictions than it should have. Rather than simply introducing a copy of the conviction, indicating that Mr. Cox previously had been convicted of burglary, the state introduced information about the complainants in those cases, details of how those convictions arose, recommendations for drug and alcohol treatment for Mr. Cox, even bail information about Mr. Cox. All of this was highly prejudicial and should entitle Mr. Cox to a new trial that severed from armed habitual criminal. Turning to those issues that concern specifically the threatening of public official count, when such a charge concerns a sworn peace officer, the state must not only prove that that officer was in a reasonable apprehension of harm on behalf of himself or a member of his family, but also that the threat contained specific facts indicative of a unique threat to the person or family of the officer, rather than simply a threat of generalized harm. State failed to prove these elements, and the jury was never instructed on these elements. First, regarding the proof, Cox knew no specific facts about these officers that he could possibly have conveyed to create a unique threat. In fact, the state only proved that one of the two officers even had a wife and children for Cox to threaten. Cox also indicated that he would kill you all while he was in the jail. That's exactly the sort of generalized threat that the statute takes out of a threatening public official conviction. This was obviously generalized, far more innocuous than the kind of specific threat that other courts have held meet the statute. For instance, in the Hale case, where the defendant provided details about where the officers lived that she was threatening, about the gruesome nature in which she would carry out her threats, and about the conduct she would engage in immediately following the completion of those threats. None of that information was contained in Cox's statements to the officers in the jail. Furthermore, it was impossible for Cox to have created a reasonable apprehension in these officers. He made his statements standing on the threshold of a holding cell, unarmed, facing two officers who had a taser trained on his chest. It's simply not possible that these officers would be in a reasonable apprehension of their safety in that scenario. Well, if you're talking about the immediacy of the threat, then we're talking about assault versus threat, right? He didn't have to be able to carry out the threat right then and there. For example, the officer's family, his wife and kids, half of them weren't there, right? Immediacy is not a requirement of the statute. An assault, on the other hand, has got to be an immediate apprehension, right? Correct. Immediacy is not a requirement, but a reasonable apprehension of future harm is. In the scenario I just presented, where a threat was made, generally, to harm you, harm you all, harm your wife and children, from the threshold of a jail cell while unarmed, does not create that kind of apprehension. The officers never testified to that kind of apprehension. Have you ever had anybody say they were going to kill you and your family? Certainly not, Your Honor. And I wouldn't want to put myself in the shoes of the officers on the evening in question. That said, the officers didn't testify that they were in any reasonable apprehension of harm. There was no suggestion that Cox had means to carry out any of his threats. He was unarmed at the time that he made them. And in any event, the jury wasn't instructed as to the elements of the offense that included reasonable apprehension. These are elements that, following 2008 amendments to the statute, specifically apply when a sworn peace officer is at issue. Nonetheless, the state failed, and rather the judge failed to instruct the jury properly, that the state had to prove both that the officers were in reasonable apprehension and that the threat contained unique facts or specific facts indicative of a unique threat. The state never challenges that this was actually error. The IPI instructions given clearly didn't state the law. The court should have modified them under Illinois Supreme Court Rule 451a. Omitting both of these elements of the offense is even more than was omitted in the Hale case, which was reversed on a similar instructional error for simply omitting the specific facts indicative of the unique threat element. The jury has to have the ability to decide if the threats were specific and unique enough, not the state in the proposed instruction that takes that factual determination out of the jury's hands. This is especially important where, as I've argued earlier, there was virtually no proof of these two elements. For these reasons, each of Cox's convictions were undermined at trial through ineffectiveness, insufficiency, and other trial court error. Cox therefore requests that this court reverse his threatening a public official conviction and remand for a new trial on his armed habitual criminal conviction. Thank you. Thank you, Mr. Ventimiglia. Thank you. Did I get that right? You did. Thank you. More or less. Great. Mr. Hunter? May it please the court, counsel, I'll begin with the effective assistance of counsel claim. When the defendant's attorney called Justin Charleston to the stand, he asked him questions regarding the gun in the van, who had the gun. And he had testified that he had stolen the gun. It was only on cross-examination that the prosecutor brought out that the defendant bought the gun from Justin Charleston. However, there was all kinds of information and evidence admitted in the people's case. The defendant would have been convicted of armed habitual criminal, even if Charleston had not testified. There was a person outside of the bar who testified that the defendant offered to sell him a handgun. The bar owner, manager, testified that the defendant came into the bar and offered to sell him a handgun. Officer Rob then responded to the call of a person trying to sell a handgun inside of a bar. And at that time, he spoke with the gentleman outside the bar. And he pointed to the defendant in the van. The officer then testified that he ordered everybody out of the van. The van was searched, and a 40-caliber black handgun was discovered. This was more than enough evidence to prove the defendant as an armed habitual criminal. So even though the defendant may be able to prove the first prong of this trickling test here, he cannot prove the second prong because there's not a reasonable likelihood that the evidence here, that the error by the defense counsel would have changed the outcome of the case. Let me ask you a question to switch gears a little bit. Let's go to the jury instruction. OK. How in the world can that not be structural error to convict somebody when the instruction doesn't state all, when you're not informing the jury of what elements the state has to prove? Yes, well, that's the white elephant in the room. The statute was amended, but the jury instruction has not been amended. In the Hale case, the defendant argued that it was plain error. The fourth district found that the defendant in Hale had proven that the error was so egregious that they could not find that the failed jury instruction would have changed the outcome of the trial. So they found plain error and reversed and remanded for a new trial. And I see your point here that it could be structural error, but it is the defendant's burden here to prove plain error because it wasn't preserved in the post-trial motion. So to answer your question, the defendant has the burden here, and it's the defendant's burden. Well, so, OK, but why hasn't he met it? I mean, he's established that the jury instruction included less than all of the elements of the crime for which the jury convicted him. I mean, we don't do that in this country, do we? No, it's problematic. But in this case, the evidence was so overwhelming, I believe if the jury was properly instructed, they would have. If it's structural, and jury instructions are structural. Yes. Are they not? What difference does it make? Yes. Not like closely balanced or not closely balanced. No. My argument to you, though, is that the evidence was so overwhelming that if the jury was properly instructed, you would have been found guilty anyway. Now, if I have not persuaded you that it is not plain here, then we'll look at the remedy. And my remedy here would be to affirm all the other convictions, because there was sufficient proof to prove those convictions. I would ask you just to reverse and remand on the threatening public official counts. But I would also ask this court to fashion an appropriate jury instruction. Well, let me ask you this, though. Also, I'm going to switch gears again on here real quick. What about the issue of failure to sever the armed habitual criminal count from the other counts, because of the evidence that naturally has to come in to prove armed habitual criminal? Yes. Well, that would not affect the armed habitual criminal count or the unlawful possession of a weapon by a felon. But perhaps it would affect the threatening of public official. And then there was a misdemeanor charge of resisting arrest. So even though it may affect those lesser counts, the armed habitual criminal count, it didn't affect that with regard to the evidence of the defendant's prior convictions. I'm sorry. So you're saying that if we agree with the defendant that these charges should be severed, then we should affirm on the non-severed portion, or the original portion that is not being asked to be severed? Well, we can sever the counts. But there's no reason to reverse the armed habitual criminal count, because the evidence was presented to prove that count. And the unlawful use of a weapon by a felon, those counts, he was found guilty of, but those merged into the armed habitual count. So even though this evidence of the defendant's prior convictions came in, those came in because of the armed habitual criminal count. And how is that aired? So the possession of a felon count, if we affirm the armed habitual criminal count, that's gone anyway, because it's a lesser included, or it merged into it. One act, one crime, whichever way you want to look at it. But at the end of the day, it's gone. And there stands no conviction for that, regardless, even as we sit here today. But the other counts, the threatening and the resisting, Threatening and resisting, yes. So if I have not persuaded you on the plain air count, then I believe the proper remedy here is it doesn't make any difference with the armed habitual criminal count. So you get the same remedy if you sever the counts. There's no need to go back and retry the defendant on the armed habitual criminal count, because that was the reason why his past crimes were admitted. If you go back and retry him on the threatening count and the resisting count, then that would be proper. So have I answered your questions? Yeah. OK. The only thing about the evidence, the defendant's prior convictions, apparently there were copies of certified copies of convictions of the defendant for two counts of burglary attached to those certified convictions were probably the regular other items, like the indictment, the sentence. And it's not clear from the record whether those were sent back to the jury room. The defendant cites in his reply brief that the prosecutor told the jury, well, look at these convictions when you get them. But of course, closing evidence is closing statements are not evidence. There's no other record, evidence in the record, that the jury saw that other extraneous material. And even if it did, it'd be harmless here. The evidence is so overwhelming on the armed habitual criminal count that it would have made no difference in this case, even if the jury had not seen that evidence. I think I've touched all of the issues here. If you don't have any questions, I ask that you affirm the armed habitual criminal count. And if there was a claim here on the threatening public official, reverse the remand. And I ask you that you fashion a jury instruction rule, because this is the third case in two years of threatening a public official, where the jury instruction was incorrect. And it may be years before the Supreme Court comes up with a IPI jury instruction. We have a great deal of influence. OK. Thank you. Mr. Jensen. First addressing the jury instruction issue, the Supreme Court actually has updated the IPI just this past year. IPI 11.50 has been updated to include these elements. It's an error that was both preserved below, it was included in counsel's post-trial motion, and it's plain error under HALE in any event. It's the same type of error that was at issue in that case. In fact, it was even worse. It concerned two elements rather than one. And the remedy is clear from HALE. It requires reversal in a new trial. Regarding severance, these are distinct incidents that occurred on June 11, 2011. One occurs earlier in the evening. One occurs later in the jail. The fact that information about that later occurrence was introduced in the armed habitual criminal case was prejudicial. Behavior in the jail may have allowed the jury to conclude the defendant had some sort of a guilty conscience, reflected some sort of a criminal history of some kind. Severance requires new trials on both of these counts. Well, let me ask you this. If we agree with you on that they should have been severed, and therefore, of course, that issue alone wouldn't affect the conviction under the armed habitual criminal act, right? It would affect the conviction because there was prejudice both ways. It was not simply that information about the armed habitual criminal case prejudiced the threatening case. It certainly did, and that's the prior conviction information. But the threatening case also prejudiced the armed habitual criminal case. It included extraneous information about an incident that was entirely separate that occurred later in the evening at the jail. It wasn't an incident that occurred during the elements of the offense of armed habitual criminal. It wouldn't have been a part of that case at all had the trial been severed. And also under any event, would you agree with Mr. Leonard that apparently in no event is, I mean, there really is no conviction unless we reverse the armed habitual criminal conviction. I mean, as we sit here today, there is no conviction on the possession by a felon because that merged into the armed habitual criminal. Correct, that was merged. So the only conviction remaining is the armed habitual criminal. The information that was introduced about those prior convictions also requires reversal on the armed habitual criminal count. There's nothing regular about including information about the complainants in a case, about the recommendations for drug treatment for Mr. Cox, about his bond, about the facts and circumstances of those cases. Rather than simply sending back the fact that Mr. Cox had prior convictions for burglary, all of that information was passed to the jury. The state argued for it. The judge agreed to include it after hearing argument from both sides. And the state, again, harped on those issues, telling the jury to examine Exhibits 5 and 6 that contained all of that information when they deliberated. Armed habitual criminal required proof of those prior crimes. It's difficult to conceive how the jury would have reached a conviction had that information not been transmitted to them. Turning very briefly to the ineffective assistance of counsel claim, the state did not prove all of the elements of armed habitual criminal absent Charleston's testimony. No other state witness put a gun in Mr. Cox's hand. All the evidence in the state's case was circumstantial evidence of constructive possession. Defense counsel opened the door to a cross-examination about Charleston's statements to the police that he had sold the gun to Cox by asking Charleston, indirect, about incidents that occurred at the jail. That was clearly prejudicial to Cox's defense. The state knew it was important. And that's why the state repeatedly harped on it in its closing arguments. For that reason, we ask for a new trial on the ineffective assistance of counsel claim. Thank you very much. Thank you both for your argument today. We will take this matter under advisement. Thank you for your written disposition.